# THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| EDWARD MURDOCK and SHERYL MURDOCK,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>MAVERICK TURTLE CREEK APARTMENTS; and NATIONAL CREDIT SYSTEMS, INC.,<br><br>　　　　　Defendants. | REPORT AND RECOMMENDATION<br><br><br>Case No. 2:23-cv-00866-JNP-JCB<br><br><br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

　　　　This case is referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B).[1] Before the court is Defendant National Credit Systems, Inc.'s ("NCS") motion to dismiss or, alternatively, to transfer venue.[2] The court has carefully reviewed the parties' written memoranda. Under DUCivR 7-1(g), the court concludes that oral argument is not necessary and, therefore, decides the motion on the written memoranda. Based upon the analysis set forth below, the court recommends converting NCS's procedurally improper motion to dismiss to a motion for judgment on the pleadings and granting the motion in part and denying it in part by dismissing all claims against NCS except for those under the Fair Debt Collection Practices Act ("FDCPA").

---

[1] ECF No. 4.

[2] ECF No. 18.

INTRODUCTION

Plaintiffs Edward Murdock and Sheryl Murdock (collectively, "Plaintiffs") filed this pro se action against NCS and other defendants in November 2023[3] and amended their complaint as a matter of right some months later.[4] The amended complaint alleges intentional infliction of emotional distress and violations of both the FDCPA and the Fair Credit Reporting Act ("FCRA"). Although the docket does not reflect that NCS was served with a summons and the amended complaint, NCS filed an answer to the amended complaint wherein it stated that the answer was subject to a motion to dismiss or, alternatively, to transfer venue.[5] A week after filing its answer, NCS moved to dismiss under Fed. R. Civ. P. 12(b)(3) for improper venue or, in the alternative, to transfer this entire action to the Eastern District of Texas under 28 U.S.C. § 1404.[6] Plaintiffs opposed NCS's motion,[7] and NCS replied.[8]

For the reasons stated below, the court recommends converting NCS's procedurally improper motion to dismiss to a motion for judgment on the pleadings, granting the motion with respect to Plaintiffs' intentional infliction of emotional distress claim and FCRA claim against NCS, and denying the motion as to Plaintiffs' FDCPA claim against NCS because Plaintiffs have pled sufficient facts to state a plausible claim under the FDCPA, and venue is proper in the District of Utah. The court first demonstrates that Plaintiffs' motion under Rule 12(b)(3) is

---

[3] ECF No. 1.
[4] ECF No. 7.
[5] ECF No. 13.
[6] ECF No. 18.
[7] ECF No. 19.
[8] ECF No. 20.

procedurally improper and recommends converting it to a motion under Rule 12(c). Thereafter, the court recommends granting the motion in part and denying in part by dismissing the intentional infliction of emotional distress claim and FCRA claim against NCS with prejudice for want of plausibility while allowing Plaintiffs' FDCPA claim to proceed.

**ANALYSIS**

I. **NCS's Motion to Dismiss is Procedurally Improper.**

The court cannot countenance NCS's improper motion to dismiss. Rule 12(b) provides that motions challenging venue, among others, "must be made *before* pleading if a responsive pleading is allowed."[9] Under Fed. R. Civ. P. 7(a)(2), a "pleading" includes "an answer to a complaint." Therefore, despite making the answer "subject to" the subsequently filed motion to dismiss, NCS's motion was filed after the answer and is improper.

II. **The Court Should Convert NCS's Motion to Dismiss to a Motion for Judgment on the Pleadings, Grant the Motion as to the Intentional Infliction of Emotional Distress and FCRA Claims, and Deny the Motion as to the FDCPA Claim.**

In situations like this, courts typically convert post-answer motions to dismiss to motions under Rule 12(c).[10] Motions under Rule 12(c) are subject to the same standards as Rule 12(b)(6) motions.[11] Although NCS did not move to dismiss for failure to state a claim, courts can raise

---

[9] Fed. R. Civ. P. 12(b) (emphasis added); *Irby v. Jefferson Ins. Co.*, No. 2:24-CV-00094-MIS-JHR, 2024 WL 3252803, at *5 (D.N.M. July 1, 2024) (concluding that motion to dismiss filed on same day as answer was procedurally improper).

[10] *See, e.g.*, *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) (stating that a motion to dismiss filed after the answer "should generally be treated as a motion for judgment on the pleadings").

[11] *Irby*, 2024 WL 3252803, at *5 (stating that "Rule 12(c) motions are reviewed under the same standards as Rule 12(b)(6) motions").

this issue sua sponte in pro se matters when it is clear that the plaintiff fails to even state an arguable claim for relief.[12]

When considering whether to dismiss under Rule 12(b)(6), the court "accept[s] as true the well[-]pleaded factual allegations [in the complaint] and then determine[s] if the plaintiff has provided 'enough facts to state a claim to relief that is plausible on its face.'"[13] "Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'"[14] "[I]n examining a complaint under Rule 12(b)(6), [the court] disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable."[15]

Additionally, Fed. R. Civ. P. 8 is incorporated into the court's Rule 12(b)(6) analysis.[16] Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[17] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

---

[12] *McKinney v. Okla. Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991).

[13] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[14] *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555-56) (alterations in original).

[15] *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

[16] *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

suffice."[18] Rule 8 requires, at least, that the allegations of a complaint put the defendant fairly on notice of the basis for the claims against it.[19] Indeed, the twin purposes of a complaint are to give the opposing party that notice so that it may respond and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief.[20] The court also notes that it must liberally construe pro se pleadings when applying the foregoing standards, but the liberal construction standard does not "relieve a pro se plaintiff of his burden to present sufficient facts to state a legally cognizable claim."[21]

Employing those standards, Plaintiffs' amended complaint clearly fails to plead a plausible claim against NCS for either intentional infliction of emotional distress or an FCRA violation. The factual allegations relating to the intentional infliction of emotional distress claim deal exclusively with the actions of Plaintiffs' Texas landlord, not NCS, which is a collection company. Although Plaintiffs generally allege concerted action between the Texas landlord and NCS, there are no factual allegations remotely establishing such a conspiracy. There simply are no facts that make a claim of intentional infliction of emotional distress (with all its subparts in the amended complaint) plausible against NCS. Therefore, the court should dismiss with prejudice the intentional infliction of emotional distress claim (with all its subparts) against NCS.

Similarly, as to the FCRA, Plaintiffs fail to state a plausible claim. Although the amended complaint is unclear as to which FCRA claim Plaintiffs are making, the closest claim the court

---

[18] *Id*.

[19] *Twombly*, 550 U.S. at 555.

[20] *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1989).

[21] *Tatten v. City & Cnty. of Denver*, 730 F. App'x 620, 624 (10th Cir. 2018).

can decipher is one for negligent noncompliance. A claim for negligent noncompliance with FCRA requires five elements: (1) NCS failed to follow reasonable procedures in reinvestigating Plaintiffs' dispute about their credit report; (2) Plaintiffs' report was inaccurate; (3) Plaintiffs sustained actual damages; (4) NCS's failure to follow reasonable procedures caused Plaintiffs' damages; and (5) Plaintiffs informed NCS about the inaccuracy.[22] Plaintiffs have not pled any facts in their amended complaint—other than having actual damages because of higher rent as a result of NCS's alleged improper debt reporting—to state a claim under FCRA. Therefore, Plaintiffs' FCRA claim should be dismissed with prejudice.

However, as to the FDCPA claim, Plaintiffs have pled sufficient facts to support that claim, and venue is proper in the District of Utah. To plead an FDCPA claim, Plaintiffs must provide facts that allege: (1) Plaintiffs are "consumers," meaning "any natural person obligated or allegedly obligated to pay any debt"; (2) "[t]he debt arises out of a transaction entered primarily for personal, family, or household purposes"; (3) that NCS is a "debt collector" under 15 U.S.C. § 1692a(6); and (4) that NCS violated the FDCPA by seeking to collect the alleged debt.[23]

The amended complaint alleges that Plaintiffs' Texas landlord is claiming that Plaintiffs owe $3,765.00 in unpaid rent for their apartment (which is a debt for a household purpose), and NCS sent Plaintiffs a letter at their residence in Nephi, Utah, to collect it.[24] Also, Plaintiffs assert that they were denied the opportunity to rent another apartment in Nephi, Utah, due to the

---

[22] *Stewart v. Equifax Info. Servs., LLC*, 320 F. Supp. 3d 1186, 1207 (D. Kan. 2018).

[23] *Young v. NPAS, Inc.*, 361 F. Supp. 3d 1171, 1183 (D. Utah 2019) (quotations and citations omitted) (alteration in original).

[24] ECF No. 7 at 6, 15.

$3,765.00 debt for back rent that NCS reported on Plaintiffs' credit.[25] Plaintiffs allege that NCS is a debt collector and that the debt NCS seeks to collect is improper.[26] Those allegations satisfy the four elements for an FDCPA claim.

Venue for the FDCPA claim is proper in the District of Utah because Plaintiffs received NCS's collection letter in Utah. Courts have determined that venue in an FDCPA case is appropriate in the judicial district where the purported debtor *received* the debt collector's notice.[27] Although the amended complaint states that "[a]ll actions complained of herein occurred in Sherman, Texas,"[28] the amended complaint also alleges that collection letters were received in Nephi, Utah.[29] Admittedly, the amended complaint on this point is not the model of clarity, but it is clear enough to show that collection letters were sent to Utah, and that is sufficient to establish venue here despite the contradictory allegations, especially given the liberal construction to which pro se pleadings are entitled.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, NCS's motion to dismiss or, alternatively, to transfer venue[30] should be converted to a motion for judgment on the pleadings, and that motion should

---

[25] *Id*. at 15

[26] *Id*. at 17-18.

[27] *Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992) (finding venue proper where debtor received a forwarded debt collector notice even though debt collector sent the notice to a different address in a different judicial district).

[28] ECF No. 7 at 2.

[29] *Id*. at 6 (stating that Plaintiffs had taken a load of their belongings to Utah, which was before the apartment was rented to someone else in April 2022, but they received collection notices six months later).

[30] ECF No. 18.

be GRANTED IN PART and DENIED IN PART. Plaintiffs' causes of action for intentional infliction of emotional distress (including its subparts) and violations of the FCRA against NCS should be dismissed with prejudice for failure to state claims. However, Plaintiffs' FDCPA cause of action against NCS states a plausible claim for relief, and venue is proper in the District of Utah. Therefore, Plaintiffs' FDCPA claim against NCS should be permitted to proceed.[31]

**NOTICE TO PARTIES**

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.[32] The parties must file any objections to this Report and Recommendation within 14 days after being served with a copy of it.[33] Failure to object may constitute waiver of objections upon subsequent review.

DATED this 29th day of August 2024.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[31] The court also recommends denying the portion of NCS's motion seeking to transfer the remaining claims in this action to the Eastern District of Texas out of convenience under 28 U.S.C. § 1404(a). The only remaining claim against NCS is under the FDCPA. This is significant because "[i]n adopting [the FDCPA], Congress was concerned about the harmful effects of abusive debt practices on consumers," and "[t]his harm does not occur until receipt of the collection notice." *Bates*, 980 F.2d at 868. The events for purposes of Plaintiffs' FDCPA claim occurred in Utah, not Texas. Therefore, transferring the FDCPA claim to the Eastern District of Texas would be improper under 28 U.S.C. § 1404(a).

[32] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

[33] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).